UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUDI ARABIAN AIRLINES CORPORATION,<br><br>            Plaintiff,<br><br>       v.<br><br>IAGCAS, LLC,<br><br>            Defendant. | Case No. 1:21-cv-06971<br>(NRB)(OTW) |

**AGREEMENT ON THE PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

   To expedite the exchange of electronically stored information ("ESI") and Hard Copy Documents in this action, pursuant to the Court's November 29, 2021, Order (Docket No. 17) and with the consent of the Parties, the following Agreement on the Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol") shall apply in this action.

**IT IS HEREBY AGREED**:

## I. DEFINITIONS

   1. "Documents" shall have the same definition as set forth in Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 34.

   2. "Electronically stored information" or "ESI," as used herein, means and refers to computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).

   3. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.  Where ESI is not stored in a portable native format, a usable exported format will suffice.

   4. "Load/Unitization file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user-created metadata.

5. "Extracted text" means the text electronically extracted from a Document, and includes all header, footer and document body information when reasonably available.

6. "OCR text" means text generated through an Optical Character Recognition Process.

7. "Media" means an object or device, including but not limited to a disc, tape, computer, or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

8. "Parties" means or refers collectively to the Plaintiff and Defendant in the above-captioned matter, as well as any later added claimants or respondents. "Party" shall refer to Plaintiff or Defendant, individually.

9. "Producing Party" means or refers to a Party in the above-captioned matter from which production of ESI or hard copy documents are sought.

10. "Requesting Party" means or refers to a Party in the above-captioned matter seeking production of ESI or hard copy documents.

## II.  COST CONTAINMENT

1. <u>Types of ESI that Need Not Be Preserved or Searched</u>.  The Parties agree that there is no need to preserve or collect ESI from the following sources which are deemed not likely to contain relevant information and to be not reasonably accessible:

   a) Voice mails that are not automatically delivered to a custodian's e-mail address in either audio or transcribed form;

   b) random access memory (RAM), temporary files, or other ephemeral data;

   c) on-line access data such as temporary internet files, histories, caches, cookies, etc.;

   d) deleted, slack, fragmented, or other data accessible only by forensics;

   e) data in metadata fields that are frequently updated automatically, such as last-opened dates, except as specified in this Agreement (the metadata fields identified in **Exhibit 1**);

   f) dynamic fields of databases or log files that are not retained in the usual course of business;

g) information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source, and;

h) personal computers and personal e-mail not used in connection with any business activities.

2. <u>Automatically Saved Versions of Documents</u>. The Parties agree to meet and confer with respect to documents that automatically save, in light of the burden of searching and producing prior versions of each document. For the avoidance of doubt, this provision does not exempt from production any manually saved versions of such documents.

3. <u>Likely Responsive Non-Duplicative ESI.</u> Notwithstanding Paragraphs II.1 and II.2, if a Party learns that non-duplicative responsive ESI may exist in the sources enumerated in Paragraphs II.1 and II.2, that Party must take steps to preserve or collect that ESI.

## III. PRODUCTION

### A. De-duplication of Production

1. <u>General</u>. The Parties shall use reasonable, good faith efforts to avoid the production of duplicate ESI following industry-standard practices for MD5 or SHA-1 hash comparison.

2. <u>Exact Duplicates</u>. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a Party's ESI data set, each Party may produce only a single copy of a responsive document or record. Where any such documents have attachments, hash values must be identical for both the document-plus-attachment as well as for any attachment standing alone. Loose electronic documents will not be compared to email or email attachments for deduplication.

3. <u>No Manual Review</u>. No Party shall identify and/or eliminate electronic duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above. The Producing Party can either de-duplicate documents within custodians/sources, or across custodians/sources. To the extent a Party de-duplicates documents, the Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "Custodians" field).

### B. Paper Production Format

1. <u>Production</u>. All paper documents shall be produced as static images: The images will be in black-and-white, single page, 300 DPI, Group IV* .TIFF images, .TXT format and standard load files, which can be used with commercially available litigation software packages, and the Default Production Fields as described in Exhibit 1. Hard copy color paper documents will be produced in

grayscale in TIFF format. The Parties will accommodate reasonable requests for production of specific images in color to the extent available. Producing such Paper Documents in such form does not change their character from Paper Documents into ESI.

2.  *Unitization*. If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party. Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents like staples, clips and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a document like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible.

**C.    ESI Production Format**

1.  *General*. The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

2.  *Production of ESI (both Native and Non-Native)*. All responsive ESI except that which is produced in Native Format pursuant to Section C.3 should be produced in black-and-white, single page, 300 DPI, Group IV* TIFF images with corresponding extracted full text or text generated via OCR pursuant to paragraph C.2.c. below, and affiliated metadata as identified in Exhibit 1. All productions will include these additional specifications:

   a)   a load file for images;

   b)   delimited load files (.dat and .opt) containing a field with the full path and filename to native files produced on the delivery media and the metadata fields Identified in Exhibit 1 (for ESI);

   c)   document-level .TXT files for all documents containing extracted full text or OCR text if extracted text is not available or if the document has been redacted;

   d)   Bates number branding and Confidentiality designation (if any) on the face of the image;

   e)   all hidden text (*e.g.*, track changes, hidden columns, comments, notes, markups, etc.) will be expanded, extracted, and rendered in the TIFF file; this specifically includes, but is not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations that are produced in TIFF format; and

   f) each of the Metadata and coding fields set forth in Exhibit 1 which can be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit 1 if such fields cannot be reasonably extracted from a Document, with the exception of Default Production Fields that are generated in the course of collection, review and production.

   g) Compression file types (*i.e.*, .ZIP) shall be decompressed in a reiterative manner to ensure that, for example, a .ZIP within a .ZIP is decompressed to the lowest possible level of compression, resulting in individual folders and/or files.

3. <u>Production of Native Format ESI</u>.

   a) Responsive spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, Csv, etc.), media files (*e.g.*, Wav, Mp4, .mov, .wmv, .mpeg, etc.), presentation files (*e.g.*, .ppt, .pptx) and photographs (*e.g.*, .jpeg) shall be produced in Native Format, except where such files are redacted. For Google documents, production of an export in a comparable format such as an Excel will constitute a native production. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format. Native files that require redaction may be produced as TIFF images with OCR Text Files in lieu of a native file provided that the TIFF renderings are manually formatted for optimal review. Responsive ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Section C.2. Nothing in this protocol shall limit a Party's ability to elect to produce other forms of responsive ESI in Native Format.

   b) Extracted Text taken from native files will be provided at a document level. There will be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The text file associated with any redacted document will exclude redacted text (*i.e.*, the Producing Party will OCR the redacted image of the unstructured ESI and replace the original extracted text).

4. <u>Request for Documents in Native Format</u>. If a Party reasonably concludes that production in Native Format of any document(s) initially produced in TIFF format is necessary (*e.g.*, to decipher the complete meaning, context, or content, to determine if there is any important use of color in the document, etc.), such Party may request production of the original document in Native Format. The Parties agree to meet and confer in good faith with respect to any such request. Reasonable requests for specific documents in Native Format accompanied by a reasonable explanation for the request shall not be refused.

5.     Appearance and Content. No document may be intentionally manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file, without prior agreement of the Requesting Party, except as necessary to comply with this Agreement. Therefore, subject to any appropriate redaction, each document's electronic image shall convey the same information and image as the original document. The Parties shall meet and confer in an attempt to resolve any complaints about the legibility of individual documents.

6.     Color. The Parties will accommodate reasonable requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available.

7.     Load File. The Producing Party shall provide a Load File to accompany the native files and TIFF images that are produced, to facilitate the use of the produced images by a document management or litigation support system as described above.

    a)     Load files shall contain the parent/child (*e.g.*, Email/Attachment, Memo/Attachment, Letter/Enclosure) relationships of documents, when possible.

    b)     For all produced documents, a standard Opticon image load file indicating document boundaries and location of images will accompany the images. The fields that should be included are detailed in Exhibit 1.

    c)     When producing a multi-page document, images for the document should not span multiple directories.

8.     Document Numbering for TIFF Images. Each page of a document produced as TIFF images shall have a legible, unique Document Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (*i.e.*, the "Bates Label"). Each file produced in Native Format shall be associated with a unique Document Number included on the TIFF placeholder provided with the native file.

    a)     Bates numbering shall be consistent across the production, contain no special characters, and be numerically sequential within a given information item. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

        (1)     The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production.

        (2)     The next nine (9) characters will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length.

b)  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to information items will be assigned Bates numbers that directly follow the Bates numbers on the information items to which they were attached.  In addition, wherever possible, each Static Image will have its assigned Bates number electronically "burned" onto the image.  Information items produced in processed native form shall contain the Bates number of the file in the file title.

9.  **Organization of Production**.  A Producing Party shall organize its production of documents originally existing in hard copy as they are kept in the ordinary course of business, taking care to scan and produce folders, redwelds, binder-covers and maintain other organizational structure.  Such materials should be produced as independent documents and be produced before the documents that were contained in these elements to the extent reasonably possible by the above-addressed unitization, (*e.g.*, the file folder should have a Bates Label immediately before the documents contained in the file folder).  The Producing Party will provide the name of the custodian who had possession of the document when it was collected.  A custodian can include an employee or person's name, or a department.

10.  **Family Relationships of Electronic Files**.  Parent-child relationships between ESI (*e.g.*, the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the metadata fields required.  If all family members are not included in the production, the Producing Party will identify any missing family members via a placeholder image bearing text sufficient to explain why the Document was not produced.

11.  **Email Suppression**.  In the course of its review and production, a Party may suppress and not review or produce lower included emails provided that they produce all top level emails of any email branch, any lower included emails that have attachments, if responsive, and any responsive email that includes unique content not included elsewhere in a produced email string.  A party may reasonably request production of an individual lower included email or emails from a produced email string, and any such reasonable requests shall not be refused where the document is available within the Producing Party's document collection.

12.  **Production Media**.  Documents shall be produced via secure FTP site or an external hard drive or flash drive for productions that are too large for expedient FTP transfer pursuant to paragraph 13, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").  Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

a)  Name of the Litigation and its case number;

      b)      Name of the producing Party;

      c)      Date of the production (mm/dd/yyyy);

      d)      Volume number;

      e)      Bates Number range;

      f)      Confidentiality Designation; and

      g)      Notes regarding any irregularities in the production (*e.g.*, whether it is replacement Production Media (see below)).

13.     <u>Production Media (FTP Sites)</u>.  Producing Parties shall produce initially via an FTP site for production volumes equal to or less than 100 GB on the date of the production.  Production volumes of a larger size than 100 GB may be produced by FTP in the process described above or via an external hard drive or flash drive pursuant to paragraph 11.  Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.  Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

14.     <u>Time</u>.  When processing non-email ESI for review and for production in TIFF format, the Producing Party will instruct its vendor to turn off any automatic date stamping.  When processing ESI, the time zone that the Producing Party has used to normalize time stamps during processing will be provided in the production metadata.  Parties must consistently produce all ESI processed using the same time zone.  When a metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy HH:mm:ss.

15.     <u>Redactions for Privilege and Personally Identifiable Information</u>.  To the extent that a responsive document contains (a) privileged content or (b) personally identifiable information, the Producing Party may produce that document in a redacted form.  Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted.  The designation shall make clear the reason for the redaction (*e.g.*, "Redacted for Privilege").  Where a document contains both privileged and non-privileged responsive content, the Producing Party shall, to the extent possible, redact the privileged material and produce the remainder of the document as redacted.  The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph including whether redacted material is subject to protection.  If redactions within a native spreadsheet become necessary, the parties will meet and confer to discuss a proposed process and provide a means to identify such documents within a production.

8

16. <u>Further Redactions and Non-Responsive Attachments</u>. The parties agree to meet and confer regarding potential redactions of documents containing personal or financially sensitive information that may be protected by U.S. or foreign data protection laws and non-responsive commercially sensitive business information. In addition, the parties also agree to meet and confer regarding the treatment of fully not-responsive attachments to responsive parent documents.

17. <u>Messaging Platforms</u>. The Parties agree to meet and confer regarding production specifications for communications transmitted through short message service ("sms") text or on any other messaging platform or service (other than e-mail), including, but not limited to, WhatsApp, Telegram, Viber, and any internal or proprietary messaging system that the Parties may use.

**D.     Search Protocol**

1. <u>Identification of Individual and Departmental Custodians</u>. In order to reduce the burden of searching the electronic files and data sources only tangentially related to the subject matter of the claims and defenses in this litigation without overlooking production of relevant and responsive documents, the Parties agree that the identification of individual and departmental custodians and data sources using reasonable, good faith judgment, is an appropriate step to reasonably identify potentially responsive documents.

2. <u>Protocol for Agreeing on Use of Search Filters</u>. The Parties agree that the application of search terms is an appropriate-but not mandatory-step to reasonably identify potentially responsive documents or to cull ESI once the material is collected from the appropriate data source. The Parties agree to meet and confer regarding use of search filters.

3. <u>Search Term Testing and Validation</u>. While there are potentially numerous ways to reasonably test and validate search terms, a Producing Party may test the efficacy of proposed search terms by assessing hit reports and/or by sampling individual query results or cumulative results, and during the meet and confer process may support the exclusion of disputed search terms by reference to such statistical hit reporting and/or intelligence garnered from such sampling, provided, however, that if a Producing Party relies upon such statistical hit reporting and/or intelligence for the exclusion of certain search terms it must first provide to the Requesting Party the underlying "hit rate data" (*i.e.*, total number of documents searched, number of aggregate hits, number of unique hits, etc.) relating to such search terms.

4. <u>Search and Production</u>. The fact that a document may have been retrieved or identified by application of search terms shall not prevent any Party from withholding from production such document for privilege or other permissible objection, including non-responsiveness. Notwithstanding the foregoing, to the extent any Party identifies responsive ESI or documents not identified by the use of search terms or filters, all such non-privileged documents must be produced,

subject to the Parties' objections to discovery requests and privileged documents will be logged to the extent required by this agreement.

E.     **USE OF TECHNOLOGY ASSISTED REVIEW**

    1.    <u>Technology Assisted Review</u>. The Parties agree to meet and confer regarding the use of technology assisted review (including concerning the below issues) to prioritize the order of review of the documents identified by search terms and, if reasonable, identify potentially responsive/non-responsive documents so long as industry standard sampling and statistical relevance procedures are observed.

        a)    <u>The Use of TAR to Prioritize</u>. The Parties may use technology assisted review (TAR) to prioritize the order of review of the documents identified by search terms. Technology Assisted Review involves the process of computer software electronically classifying documents based on input from human reviewers, and using algorithms to reduce the amount of review required on documents classified as potentially non-relevant. This process will prioritize the review and production of the most relevant documents.

        b)    <u>The Use of TAR to Cull</u>. Should a Party choose to cull documents by using TAR, quality control and validation of the scored and unscored set shall be performed to validate that TAR resulted in proper culling of non-responsive material. This shall be accomplished by generating a number of statistically representative samples from both the responsive and non-responsive set, based on a high level of confidence and a reasonable confidence interval. Parties propose that a target recall level of 90% recall or higher will be used to score and validate the responsive set should TAR be used to cull the document universe.

        c)    <u>Files Not Suitable for TAR</u>. Certain files not amenable to TAR application in a text-based predictive coding platform are not always identified by TAR as "scored" during TAR training. Analysis of files with low textual content typically include numerically-based text files or other substantive text files which can cause text analytics issues (*e.g.*, certain spreadsheets) as well as non-text based files, file types without meaningful text, compressed files, and files with too little or too much text should be analyzed, sampled and validated, for example:

            (1)    Audio/Video (multimedia) files

            (2)    System files and empty / zero byte files

            (3)    Graphics, drawings, and plans

            (4)    Encrypted and corrupt files

>> (5) Empty container files (though the documents contained within container files such as .ZIP and .RAR files will be sent through TAR to the extent that contained files are suitable for TAR).

> Should TAR be used to cull, a reasonable validation methodology for 'Not suitable for TAR' documents will be implemented. After validation, the data that is likely to contain user created content will be potentially reviewed manually outside of the TAR process, if applicable. The remaining document types, unlikely to contain user-created content, will be statistically sampled to verify this lack of usable content before being diverted from review.

**F.     Structured Data Format**

> 1.     To the extent a response to discovery requires production of discoverable electronic information contained in a database and it cannot reasonably be produced in a legible format, for example, in either Excel or .csv format, in advance of producing such information, the Parties agree to meet and confer-regarding the format of the production (*e.g.*, commercial database, or some other agreed-upon format). If the structured data exists in a proprietary database format, and an exportable electronic file cannot be created in a reasonably usable format, then the Parties will meet and confer regarding utilizing the proprietary software to generate the production in an alternative format or other options.

**G.     Confidentiality of Produced ESI**

> 1.     <u>Native and Non-Native Format</u>. Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of this Agreement. Any objections to production shall otherwise be made pursuant to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, the applicable confidentiality designation shall be burned electronically on each page of such document. The Producing Party should also include in the flat file (.txt or .dat) a designation that the document is protected and the level of protection, as required by any protective order or agreement.

> 2.     <u>Native Format</u>. If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, then the designation may be included in the filename and shall be burned electronically on to the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (*e.g.*, CD, USB, or hard drive) containing such native ESI data shall be labeled with the applicable confidentiality designation." The Producing Party should also include in the flat file (.txt or .dat) a designation that the document is protected and the level of protection..

**IV.   MISCELLANEOUS**

    1.    <u>Translation</u>.  The parties agree to meet and confer regarding the translation of non-English documents and associated metadata.

    2.    <u>Laws of the Kingdom of Saudi Arabia</u>.  The parties agree to meet and confer regarding any issue involving, or conflict arising from, this Agreement and the laws or regulations of the Kingdom of Saudi Arabia.  Nothing in this Agreement will bind a party to take any action in violation of the laws of any applicable jurisdiction, including that of the Kingdom of Saudi Arabia.

    3.    <u>Variance</u>.  Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court.  Failure of the Parties to agree on any modifications for good cause shown may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure.

**V.   PRIVILEGE LOGS AND CHALLENGES**

**A.   Privileged Documents that Need Not Be Logged**

    1.    <u>Preservation of Privileged Materials</u>.  All privileged material should be preserved in the event of a later dispute with respect to the propriety of any privilege claim or the sufficiency of the privilege log.  The Parties agree that they will confer at a later time to determine whether certain categories of privileged documents, such as communications with outside counsel regarding this action, can be excluded from the logging requirement and attempt to agree on formats designed to reduce the burden associated with privilege log drafting, such as "categorical" or "metadata only" privilege logs.

**B.   Format of Privilege Log**

    1.    <u>General</u>.  The privilege log shall be produced as a searchable PDF file.

**C.   Contents of Privilege Log**

    1.    <u>General</u>.  If the parties are unable to agree on an alternative logging format as described in V.A.1. above, documents withheld from production that a Party believes are covered by an attorney-client privilege and/or work product protection should be logged on a privilege log on a document-by-document basis, except as identified below.  Consistent with Fed. R. Civ. P. 26(b)(5), the following information should be provided (as applicable) in the privilege log for each document: (1) unique document identification number; (2) document type; (3) family relationship; (4) date; (5) author; (6) each recipient broken out separately to provide email To, CC and BCC info; (7) privilege or protection claimed; and (8) description of the subject matter of the document or electronically stored information sufficient to enable the requesting party to assess the validity of the privilege claim.

      2.    <u>Email Strings</u>.  For those documents that contain a series of e-mail communications in a single document ("email string"), it shall be sufficient to log the 'string' without separate logging of each included communication, but reference to the document as an "email string" should be made in the document description field of the log; and to the extent that different emails within the email string are protected by different privilege bases, the log shall separately identify that within the email string certain emails are subject to one particular privilege claim and other emails within the string are subject to a different privilege claim.  Email strings that are not privileged in their entirety should be produced in redacted form if they contain responsive, non-privileged content.  The parties will meet and confer if a Receiving Party requests additional information to validate the claim of protection for a specific email string.  Such information shall not be withheld upon good cause shown for the request.

      3.    <u>Identification of Counsel</u>.  All counsel or their employees (or direct reports for in-house counsel) involved in purportedly privileged communications or work product shall be identified as such in the privilege log.

**D.    Challenges to Privilege Log**

      1.    <u>General</u>.  If a Requesting Party believes in good faith that one or more items in a Producing Party's privilege log should be produced and are inappropriately being withheld, then it shall raise the issue as to each log entry with the Producing Party in writing with reasonably sufficient detail so that the Producing Party may understand the Requesting Party's complaint.  Within ten (10) business days, the Producing Party shall respond in writing.  If the response does not satisfy the Requesting Party, then the Parties shall meet and confer and if the dispute as to the privileged nature of the material cannot be resolved, then the Requesting Party may seek relief from the Court as to the specific log entries raised with the Producing Party.  Nothing in this procedure to challenge a Party's withholding of a document modifies the Producing Party's burden to establish the privileged nature of the withheld document.

**VI.    <u>OBJECTIONS</u>**

      1.    <u>General</u>.  The Parties do not waive any objections to the relevance, responsiveness, production, discoverability, possession, custody, control, admissibility, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of document requests related to Documents.  Nothing in this Agreement shall be interpreted to require the disclosure of irrelevant information, relevant information that is unduly burdensome, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity or is otherwise not discoverable.

      2.    <u>No Waiver of Rights Regarding Review</u>.  By entering this Agreement, a Party is not giving up its right to review its documents for privilege or any other

reason (including to identify non-responsive documents) and the existence of this Agreement cannot be used to compel a Party to produce documents without review. Moreover, this Agreement does not mean that the cost of review should not be considered in whether any particular discovery is disproportionate.

3.      <u>Disputes</u>.  The Parties will meet and confer in an attempt to resolve any objections if necessary.

| | |
|---|---|
| **COHEN & GRESSER LLP** | **NORTON ROSE FULBRIGHT US LLP** |
| By: */s/ David F. Lisner* | By: */s/ Steve M. Dollar* |
| Mark S. Cohen | Steve M. Dollar |
| mcohen@cohengresser.com | *steve.dollar@nortonrosefulbright.com* |
| David F. Lisner | Anthony D. Lauriello |
| dlisner@cohengresser.com | *anthony.lauriello@nortonrosefulbright.com* |
| 800 Third Avenue, 21st Floor | 1301 Avenue of the Americas |
| New York, NY 10022 | New York, NY 10019 |
| Phone: (212) 957-7600 | Telephone: (212) 318-3000 |
| Fax: (212) 957-4514 | |
| | *Attorneys for Plaintiff Saudi Arabian* |
| *Attorneys for Defendant IAGCAS, LLC* | *Airlines Corporation* |

**EXHIBIT 1**

**DOCUMENT PRODUCTION FORMAT SPECIFICATIONS**

It is proposed that documents be exchanged in an electronic format. The following information outlines proposed production specifications. To the extent the production format specifications listed below conflict with the terms of the ESI Protocol set forth above, the ESI Protocol shall control.

**A.     Format**

Produced documents will be provided as black and white, Group IV single page TIFF images, 300 DPI, named the same as the Bates number (without embedded spaces or special characters). Color images will be provided in .jpg/.jpeg format. Parties will produce all non-redacted spreadsheet (*e.g.*, Excel, Lotus, Google Sheets, CSV, etc.) files, presentation files (*e.g.*, .ppt, .pptx) and media files (*e.g.*, Wav, Mp4, etc.) in Native format. As standard practice, no other native files will be produced. Other native files will only be provided as the parties may agree (on an individual document-by-document basis) or as the Court may order.

**B.     Load File Specifications**

In order to facilitate loading the images into document review software, a standard image load file indicating document boundaries and location of images will accompany the images. The load file will be in an Opticon compatible format.

**C.     OCR**

Machine generated OCR created from scanned images or redacted documents will be provided at a document level. There will be one OCR text (.txt) file per document, named the same as the beginning Bates number (Document ID) of the document. The OCR text file associated with any redacted document will exclude redacted text.

**D.     Extracted Text**

The extracted text taken from the native file will be provided at a document level. There will be one extracted text file per document, named the same as the beginning Bates number (Document ID) of the document. The extracted text file associated with any redacted document will be replaced with an OCR text file which excludes redacted text.

**E.     Default Production Fields**

The following default fields will be provided for all documents in the production.

| **FIELD NAME** | **DESCRIPTION** |
|---|---|
| Begin Bates | Beginning Bates Number |
| End Bates | Ending Bates Number |

| | |
|---|---|
| Bates Range | Bates Range for Email |
| Begin Attachment | Beginning Bates Number of a Family Group |
| End Attachment | Ending Bates Number of a Family Group |
| Att. Count | Number of attachments to an email |
| Attachment Name | The file name(s) of all attachments |
| Parent Date and Time | Date and Time Parent Email was Created.  Must be in the "mm/dd/yyyy HH:mm:ss" format. |
| Parent ID | Bates Number of the Parent Email (populated for attachments only) |
| Child ID | Bates Number of the Attachment (s) (populated for Parent Emails only) |
| Custodian/Source | The original custodian, and all other custodians, separated with a multi-value delimiter, from whom the Document was collected and who possessed the document.  For documents from centralized repositories where custodian name is unavailable, identifying source information should be provided. |

F.   **Metadata Fields**

The following metadata fields will be exchanged in connection with electronic documents to the extent applicable and available.  Specific metadata associated with redacted documents may be withheld from the production if the metadata field is likely to contain privileged or protected information, subject to the requesting party's right to seek production.

| **FIELD NAME** | **DESCRIPTION** |
|---|---|
| Subject | Subject Line of the Email |
| File Name | Name of the File as maintained in the ordinary course |
| File Extension | File Extension |
| Sent Date and Time | Email Sent Date and Time.  Must be in the "mm/dd/yyyy HH:mm:ss" format. |
| Received Date and Time | Date and Time Email Received.  Must be in the "mm/dd/yyyy HH:mm:ss" format. |
| Created Date and Time | Date and Time File was Created.  Must be in the "mm/dd/yyyy HH:mm:ss" format. |
| Modified Date and Time | Date and Time File was Last Modified.  Must be in the "mm/dd/yyyy HH:mm:ss" format. |
| Last Accessed Date and Time | Date and Time File was Last Accessed.  Must be in the "mm/dd/yyyy HH:mm:ss" format. |
| Author | Author of the Application file |

| | |
|---|---|
| From | Sender of an Email |
| To | Recipients of the Email |
| CC | CCs of the Email |
| BCC | BCCs of the Email |
| File Type | Email, Spreadsheet, Word Processing Document, etc. |
| File Path | Location of the file or email as it is maintained in the ordinary course |
| Record Type | Type of file – Email, attachment, or eFile |
| Email Message ID | Unique identifier for email |
| Email Conversation Index | Indicating relative position of email within the conversation thread |
| Redacted (yes/no) | Indicating whether the File has been redacted |
| Hidden Contents/Embedded Objects (yes/no) | Indicating whether File has hidden contents or imbedded objects |
| Native Link | Native Link for File |
| Native File | Native files named after the Bates number, *e.g.*, E00001.xls (in contrast to File Name which is the original name of the file) and their path on the delivery media |
| MD5 Hash | Value commonly used to de-duplicate files or identify duplicates |
| Time Zone Offset | UTC−00:00 |

Metadata will be provided in a flat file (.txt or .dat).  Each line will begin with the fields Beg Bates and End Bates.  Please use default Concordance delimiters, as follows:

- Field delimiter – ASCII character 20 (¶)
- Text delimiter – ASCII character 254 (þ)
- Newline indicator – ASCII character 174 (®)

**G.     Native Production Format**

- Native files will be produced with a Bates stamped image indicating that the file was produced natively.
- Native files will be named the same as the beginning Bates number (Document ID) as the Bates stamped image.
- Where documents are produced in native form, a full path to the native document must be included in the Native File field in the production load file.